IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:08-CR-53 |
| | ) | (PHILLIPS/GUYTON) |
| ANTHONY SHANNON, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the Court on the defendant's Motion to Suppress Evidence [Doc. 13].

This motion was referred to the undersigned United States Magistrate Judge for a Report and

Recommendation pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on August 1,

2008. Assistant United States Attorney David Lewen was present representing the government.

Attorney Jonathan Moffatt was present representing the defendant, Anthony Shannon ("Shannon").

The defendant was also present. Accordingly, the Court took the suppression motion and related

filings under advisement on August 1, 2008.


## I.  POSITIONS OF THE PARTIES

The defendant was indicted [Doc. 1] on one count of possession of cocaine base ("crack")

with intent to distribute. The charge arises out of the stop and frisk of the defendant on September

6, 2007, during which the defendant spit a quantity of crack out of his mouth.

In his motion to suppress [Doc. 13], the defendant claims that his person and the vehicle he

1

was driving were illegally seized and searched by officers of the Knox County Sheriff's Department. He states that the officers seized him without probable cause, and that all evidence obtained from the search, and all statements made by the defendant, must be suppressed.

The government filed a response [Doc. 16], asserting that defendant Shannon's motion should be denied, because officers had probable cause to order the defendant out of his vehicle, based on an outstanding arrest warrant and information from a reliable confidential informant ("CI"). Further, the government states that there is no search issue, because the crack was in plain view after the defendant spit it out his mouth during the pat down.

## II. SUMMARY OF TESTIMONY

At the evidentiary hearing on this motion, the government called Officer Paul Curtis ("Curtis") as its first witness.[1]

Curtis testified that on the date in question, September 6, 2007, he was an officer with the Loudon County Sheriff's Office, assigned to the FBI Drug Task Force. In the course of his duties on that date, Curtis was investigating the defendant, based on information he had received from a CI. Curtis explained that this particular CI was someone with whom Curtis had been working since June 2005. Curtis testified that this particular CI was "reliable" and "trustworthy", and the CI had provided accurate information on numerous cases, resulting in "many convictions."

With regard to Shannon, the CI reported that he had been in Shannon's hotel room at the Budget Inn on Cedar Bluff Road the previous night, observing the sale of crack cocaine by Shannon. The CI also reported that Shannon was in possession of a handgun. The CI did not know Shannon

---

[1]The transcript of the testimony is part of the record [Doc. 19].

personally, but did give a description of the defendant. The CI also described the defendant's vehicle as a large, older model brown Cadillac with large rims (wheels).

Curtis testified that he contacted the Knox County Sheriff's Office ("K.C.S.O.") and passed along the information from the CI. Curtis also went to the Budget Inn, spoke with the hotel clerk, and learned that the person in question was named Anthony Shannon, and Shannon did have a room there. Curtis was admitted to Shannon's room by the clerk. In the room, Curtis found clothing and personal items which caused Curtis to conclude that Shannon would return to the hotel.

Curtis next determined that there was an outstanding arrest warrant for Shannon out of Loudon County, based on an indictment charging Shannon with drug trafficking.[2] Curtis shared this information with the K.C.S.O.

The K.C.S.O., along with Curtis, then set up surveillance on the Budget Inn. Approximately eight or nine officers participated in the operation, staking out various locations and communicating with each other about the activity they saw.

In the course of this surveillance, the officers saw an older model brown Cadillac with large rims, driven by a black male, go into the rear parking lot of the Budget Inn. This vehicle, according to Curtis, fit "to a T" the vehicle description given by the CI. A small green car pulled into the rear parking lot with the Cadillac, and the two cars parked near each other. The rest of the parking lot was empty. These facts, along with the fact that Shannon's room was at the front of the hotel, raised Curtis's suspicion of criminal activity.

Curtis testified that after the two cars parked, officers approached the Cadillac and asked the

---

[2]The Indictment is Exhibit 1 to the hearing. The Arrest Warrant is Exhibit 2 to the hearing.

driver to step out.  The driver was identified from his driver's license as Shannon, whereupon the defendant was arrested on the arrest warrant.

On cross-examination, Curtis testified that he was part of the surveillance team at the Budget Inn.  The conversation with the CI occurred earlier that same day.  The conversation was between the CI and another Loudon County narcotics officer, Sergeant William Hall, who relayed the information to Curtis.

There is a tape recording of the conversations among the officers.[3]  The officers did not use the name Anthony Shannon on the tape, because criminals are known to monitor police frequencies with scanners.

The government's second witness was Sergeant David Amburn ("Amburn") of the K.C.S.O.  Amburn testified that he was part of the surveillance team at the Budget Inn on September 6, 2007, looking for a large, older model brown Cadillac with oversized rims being driven by a black male.  A CI had advised that a person matching that description, and armed with a gun, was selling narcotics at the Budget Inn.  A photograph of the vehicle driven by Shannon at the time of his arrest was identified.[4]

Amburn also testified that the Budget Inn "is a known activity hot spot for us for drug activity."  Amburn had been to this particular hotel "on numerous different drug investigation cases."

After the defendant's Cadillac parked in the rear parking lot of the Budget Inn, the officers approached the vehicle.  Amburn testified that an Officer Jones asked the defendant to step out of

---

[3]The tape was admitted as Exhibit 5 to the hearing.

[4]The photograph was admitted as Exhibit 3 to the hearing.

4

the Cadillac. Amburn provided security cover for Officer Jones as he patted down Shannon. Amburn testified that as Officer Jones began the pat down, he saw Shannon spit crack cocaine out of his mouth and onto the pavement directly below himself. Amburn advised Officer Jones that Shannon had just spit crack cocaine on the ground. Then particles of the "same substance" was found in Shannon's mouth. The substance was ultimately tested and confirmed to be crack cocaine.

On cross-examination, Amburn testified that no gun was found during the search of Shannon. He also testified that while he was told of the outstanding arrest warrant on Shannon before Shannon was stopped, he did not have the arrest warrant in his possession.

## III. ANALYSIS

The defendant contends that his rights under the Fourth Amendment were violated because the officers had no right to ask him to step out of his car to be patted down and identified to determine whether he, in fact, was the Anthony Shannon on the arrest warrant. Specifically, he argues that the officers had neither probable cause nor reasonable suspicion to order him from his vehicle. The government relies on the information provided by the CI, the information learned in the hotel about Shannon, and the outstanding arrest warrant for Shannon, arguing the pat down was done for purposes of officer safety. The government also argues that there was no search, as the crack cocaine was found in plain view on the ground after Shannon spit it out of his mouth.

Terry v. Ohio, 392 U.S. 1, 20 L.Ed.2d 889, 88 S. Ct. 1868 (1968), permits a "stop and frisk" by police where the stop is based on specific, articulable facts indicating reasonable suspicion that a crime has been committed. Id. at 21. Furthermore, "[t]he scope of activities permitted during an investigative stop is determined by the circumstances that initially justified the stop." United States

v. Obasa, 15 F.3d 603, 607 (6th Cir. 1994) (citing United States v. Sharpe, 470 U.S. 675, 682, 84 L.Ed.2d 605, 105 S.Ct. 1568 (1985)).

Officers have the authority to stop and temporarily detain citizens "if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officers lacks probable cause." United States v. Sokolow, 490 U.S. 1, 7, 104 L.Ed.2d 1, 109 S.Ct. 1581 (1989) (quoting Terry, 392 U.S. at 30). The reasonableness of a Terry stop and search is determined by examining "(1) whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to a reasonable suspicion; and (2) whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand." United States v. Hardnett, 804 F.2d 353, 356 (6th Cir. 1986)

The Court finds that the testimony of Curtis and Amburn was not impeached, and is credible. In fact, it appears that the parties do not dispute the facts which are central to the issue before the Court. The Court finds that Curtis was informed, albeit indirectly through another narcotics officer, by a reliable CI that a black male trafficking drugs at the Budget Inn would be in that area, armed and driving a brown Cadillac with large rims. Based on this, the Court finds that the officers had adequate legal cause to believe that Shannon may be armed and dangerous and had recently been involved in drug trafficking. The officers "were aware of specific and articulable facts which gave rise to a reasonable suspicion" that Shannon was engaged in criminal activity. Therefore, the Terry stop and pat down were justified by the CI's tip, the facts observed at the motel by officers, and the arrest warrant. United States v. Hensley, 469 U.S. 221, 229-230 (1985) (outstanding warrant establishes probable cause to order person from vehicle and make arrest). Accordingly, the Court

finds that the officers lawfully stopped Shannon, and further, that Shannon lawfully was patted down for officer safety while Shannon's identity was confirmed to execute the arrest warrant.

During a <u>Terry</u> stop, an officer may conduct a limited protective search for concealed weapons when he "is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." <u>Adams v. Williams</u>, 407 U.S. 143, 146, 32 L.Ed.2d 612, 92 S.Ct. 1921 (1972) (internal quotation marks and citation omitted). When officers approached the defendant, they knew that a CI had reported that Shannon was armed the previous night. Every other detail provided by the CI occurred just as the CI had predicted. Officers, therefore, had justification for patting down the defendant to ensure the safety of the officers. <u>See</u> <u>United States v. Foster</u>, 376 F.3d 577, 586 n. 7 (6th Cir. 2004) ("[A]n officer is permitted to conduct 'a reasonable search for weapons for [his or her] protection. . . ., where he [or she] has reason to believe that he [or she] is dealing with an armed and dangerous individual.'").

Having found that the officers could have reasonably believed the defendant was potentially armed and dangerous, and that the frisk of the defendant was therefore proper, the Court now turns to the issue of whether there was a search.

Since Curtis discovered the crack cocaine, which Shannon had spit on the pavement, even before the frisk of the defendant was completed, there was no search, and it did not violate the Fourth Amendment for him to seize the drugs in plain view on the ground.

# V. CONCLUSION

After carefully considering the evidence introduced during the course of the evidentiary hearing, and after reviewing the relevant legal authorities, it is clear that there is no basis to suppress any evidence seized in this case. For the reasons set forth herein, it is **RECOMMENDED** that defendant's Motion to Suppress Evidence [Doc. 13] be **DENIED**.[5]

Respectfully submitted,

_____s/ H. Bruce Guyton_____
United States Magistrate Judge

---

[5] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see also Thomas v. Arn, 474 U.S. 140 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).